United States District Court
For the Western District of Michigan
Southern Division

FILED- LN
February 20, 2025 10:21 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: eod  scanned by: eod/  2/20

Ronnie Dante Thomas, #254903,

    Plaintiff,

v.

Officer's Piggett, et al.,

    Defendants.

_____/

Case No. 1:25-cv-00020
Hon. Jane M. Beckering

Motion to Exclude Legal
Claim(s) From Prisoner Litigation
Reform Act, Pub. L. No. 104-134,
110 Stat. 1321 (1996) (PLRA);
With Incorp. Memo. of Law

NOW INTO COURT comes Ronnie Dante Thomas, #254903, Plaintiff, by pro se, moves the court to Exclude Legal Claim(s) from PLRA mode of analysis' (screening) premised on A 42 U.S.C. section 1983 bill submitted on January 6, 2025 (ECF No. 3) and state the following in support:

### Factual Summary

1)    On about Jan. 6, 2025, Plaintiff submitted a verified section 1983 complaint. id.

2)    Plaintiff's submission factually alleged <u>private contracts</u> with <u>Thomas Family Trust</u> and <u>Syllogic Visions Consulting, LLC</u> were collaterally and adversely affected by the Defendant's (officers, Piggett, Lt. Ramirez, R. Silvernail and D. Jensen) Eighth (8th) amendment, First (1st) Amendent (freedom of speech - retaliation, access to courts) and

-1-

      Nineth (9th) Amendment (preserved/un-enumerated Rights) <u>id</u>.;

3)    Plaintiff factually alleged, Racketeering Influence and Corrupt Org.s Act (RICO), 18 U.S.C. subsections 1961-1968 relative to the two (2) or more violations of Michigan Compiled Laws (MCL) tortious interference with business relationship expectancy and tortious economic relations between Plaintiff Thomas Family Trust and Syllogic Visions Consulting, LLC, legal claim <u>id</u>..

In April 26, 1996 U.S. Congress endeavored to curtail prisoner litigation by enacting the PLRA. The PLRA covers several topics, including prospective remedies in suits challenging prison conditions and exhaustion of admin. remedies, that are beyond the scope of the instant motion. Congress sought to put in place economic incentives that would prompt prisoner to "stop and think" before filing a complaint. Pro se prisoner lawsuits and appeals very likely continue to impose significant burdens on federal districts and appeals courts in spite of the PLRA. Prisoners who are subject to governmental authority twenty - four hours a day will inevitably encounter some actions they consider worthy of legal redress and they have ample time to devote to the task of preparing their court papers. The challenge for the courts is to avoid letting the large number of frivolous complaints and appeals impair their conscientious consideration of the few meritorious cases that are filed.

Nevertheless, the PLRA and progeny case law is devoid of any legal prescription on screening prisoners civil rights actions in the context of private-actions (RICO), prisoner litigation affecting private contracts executed by a prisoner before or during incarceration. What, about private rights? Thomas Family Trust and Syllogic Visions Consulting, LLC entered into private contract of hire with Plaintiff (prisoner). For purposes of these relationships, Plaintiff transcended his prisoner status. <u>Hamilton</u> v. <u>Daniel International Corp</u>., 273 S.C. 409, 411-12

(1979). see also, MCL 777.7801; MCL 450.4101 et. seq.. "Every person in the service of another, under contract of hire expressed or implied, including aliens". MCL 418.161(1)(b).

RICO Section 1961:

The legal entitlement to business relations un-hampered by schemes prohibited by predicate statutes of the Racketeer influenced and Corrupt Organizations Act (RICO), 18 USCS subsections 1961-1968, is a property interest sufficient to provide standing under RICO. Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1168 (9th Cir. 2003). The harm the instant Plaintiff alleges amount to interference w/busingess relationship expectancy and economic relations, both of which are Michigan law. cf. Badice v. Brighton Area Sch., 265 Mich. App. 343, 365-367 (2005). Michigan law protects the legal entitlement to current and prospective contractual relations. id. "Racketeering activity" is a broad concept, which "consists of no more and no less than commission of a predicate Act." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 495 (1985). In the instant case, Plaintiff proper alleged that his injuries were "by reason of a violation of section 1962", tracking in complaint (ECF. No. 1), the language of section 1962, which makes it illegal to, among other things, acquire or maintain control of an "enterprise", or conduct or participate in its affairs, through a "pattern of racketeering activity". MDOC is an "enterprise" within the meaning of 18 U.S.C. subsection 1961 (4); and acts that suggest "racketeering activity", section 1961 (1) and suggest a "pattern", id. section 1961 (5). Starting with Sedima, S.P.R.L., the RICO statute has been stretched both in scope and meaning via judicial construction.

Alternatively, if the Court disagree with the construction given RICO as afforded by the Supreme Court, Plaintiff alleged facts culmination into a Nineth (9th) Amendment legal claim related

-3-

to the contractual impairments as a result of Eighth (8th) and First (1st) Amendment violations.

Speaking to the Ninth (9th) Amendment, the U.S. Supreme Court stated:

> "[t]he law is perfectly well settled that the first ten amendments to the Constitution, commonly known as the Bill of Rights, were not intended to lay down any novel principles of government, but simply to embody certain guaranties and immunities which we had inherited from our English Ancestor." cf. Robertson v. Baldwin, 165 U.S. 275, 281 (1897).

Analogously in Brown v. Walker, the Court noted:

> "[t]he object of the first eight amendments to the Constitution was incorporated into the fundamental law of the land certain principles of natural justice which had become permanently fixed in the jurisprudence of the mother country, the construction given to these principles by English Courts is cogent evidence of what they were designed to secure and of the limitations that should be put upon them. id. 165 U.S. 591, 600 (1896).

To that tapestry, Plaintiff is of African ancestry not, English. Hence, in spite of the Fourteenth (14th) Amendment's complete ratification (Dec. 1865), it would be asinine to posit that the Courts (Roberton and Brown) were alluding to exslaves. cf. Dred Scott v. Sandford, 60 (19 How.) 393 (1857) (holding inter alia, that blacks were not and could not constitutionally become a citizen of the United States). Notwithstanding, Roberton and Brown does supply a precedential modality with regard to the Federalist/Anti-federalist (Framers) original purpose of the Ninth (9th) Amendment and natural rights (justice) principles. At the 1787 Constitutional Convention, Luther Martin Addresses the issue:

> "[I]n order to prove that individuals in a State of Nature are equally free & independent he read passages from John Locke, Vattel, Lord Summers - - Priestly." James Madison, notes (June 27, 1787), in 1 THE RECORDS OF THE FEDERAL

CONVENTION OF 1787 at 437 (Max Farrand ed., Rev. ed. 1937).

Locke had written:

> "[T]hough I have said... That All Men by Nature are equal, I cannot be supposed to understand all sorts of Equality . . . the Equality 1 there of, as to the Business in hand, being that equal Right that every Man hath, to his Natural Freedom, without being subjected to the will or Authority of any other Man".

In the same vein, the Anti-Federalist "Brutus", wrote:

> "[I]f we may collect the sentiments of the people of America, from their own most solemn declarations, they hold this truth as self evident, that all men are by nature." "Brutus," N.Y.J., Nov. 1, 1787, reprinted in 2 THE COMPLETE ANTI_FEDERALIST 372 (Herbert J. Storing ed., 1981).

In attempting to find sources for Ninth (9th) Amendment Rights, many scholars have focused on the natural law sources with which the Framer's and Ratifier's would have been familiar: the works of Edward Coke, John Locke and William Blackstone. J.D. Droddy, Originalist Justification and Methodology of Unenumerated Rights, 1999 MICH. ST. L. REV. 809, 829-33. The teachings of Blackstone, with which the Colonist's would have been familiar. (Knowlton H. Kelsey, The Ninth Amendment of the Federal Constitution, 11 IND. L.J. 309 (1936)).

Under Kelsey's formulation of rights, a judge who sought to determine whether a particular right was retained under the Ninth (9th) Amendment would look at whether it was one of the rights which Blackstone counted as natural rights or Englishmen. id. In articulating these rights, Blackstone broke them down into three primary categories:

> 1) the right of personal security, which he defined as consisting of a persons legal and un-interrupted enjoyment of his life, his body, his health and his reputation;

> 2. the right of personal liberty, which he defined as the power of locomotion; of changing situation or moving one's person to whatsoever place one's own inclination may direct; without imprisonment or restraint, unless by due course of law; and
>
> 3) right of private property, defined as the free use, enjoyment and disposal of all acquisition, without any control or diminution, save by the laws of the land. WILLIAM BLACKSTONE, 2 COMMENTARIES * 121, 129. Kelsey, supra note 9, at 313-14. Kelsey notes that in the Colonial period, nearly as many of Blackstone's Commentaries were sold in America as in England. id. at 313.

Blackstone, however, is not the only source for advancing a natural law based theory of the Ninth Amendment. J.D. Droddy argues that while Blackstone was certainly an influential source in the colonists' understanding of their rights, others, Locke, Coke, and Samuel Pufendorf should also be considered when looking for sources of the colonists' understanding. cf. Droddy, supra note 59, at 830-32; see also Edward S. Corwin, the higher law Background of American Const. Law (Pt. 2), 42 HARV. SL. Rev. 365, 383 (1928) (crediting Locke's influence on the Constitution); Jason S. Marks, Beyond Penumbras and Emanations: Fundamental Rights, the Spirit of the Revolution and the Ninth Amendment, 5 SETON HALL CONST. L.J. 435, 475-77 (1995) (arguing for Pufendort's influence on the Constitution). Droddy contends that all of these sources can be looked to when attempting to ascertain the rights protected by the Ninth Amendment. cf. Note 59, at 830-32.

The third (3rd) primary category (right of private property i.e. contract, natural right)) is applicable in this case in-connection to Plaintiff's Ninth Amend. legal claim.

In contrast; the PLRA provides that a court shall dismiss the case at any time" if it determines that the "Action or appeal" is:

(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

28 USCS subsection 1915(e)(2)(B).

The PLRA provisions are applicable to Plaintiff's Eighth Amend. and ADA claims asserted in complaint. (ECF No. 1). However, Plaintiff's Ninth Amend.; right of private property, defined as the free use, enjoyment and disposal of all <u>acquisition</u>, <u>without control</u> or <u>diminution</u>, save only by the law of the land.) the PLRA is inapplicable to the extent, that Plaintiffs' <u>prisoner status</u> is transcended by the <u>relationship</u> between Plaintiff, Thomas Family Trust and Syllogic Visions Consulting, LLC. <u>Hamilton</u>, 273 S.C. at 411-12.

Relatedly, although the PLRA gives the Court discretion is screening prisoner civil rights actions. 28 USCS section 1915(e)(2)(B). As a general matter, a court's exercise of it's discretion is not unbounded; that is, a Court must exercise it's discretion within the bounds set by relevant statutes and relevant, bending precedents. <u>Albemarle Paper Co. v. Moody</u>, 422 U.S. 405, 416 (1975) (noting that a decision calling for the exercise of discretion "hardly means that it is unfettered by meaningful standards or shielded from thorough appellate review").

In this case Plaintiff's complaint was filed with the Court on Jan. 6, 2025 presumptively still being screened (section 1915). But, a month plus is unreasonable especially, in relation to a request for preliminary injunction submission relative to Plaintiff's First Amend. retaliation claim asserted in complaint. (ECF Nos. 1,2). Preliminary injunction motion filed Feb. 4, 2025. <u>id</u>. Judge H.J. Friendly noted that; "[E]ven when a statute or rule expressly confers discretion or uses the verb 'may' or some similar locution, there is still the implicit command that

the judge shall exercise his power reasonably." Henry J. Friendly, <u>Indiscretion About Discretion</u>, 31 Emory L.J. 747, 765 (1982).

For these reasons herein, Plaintiff request Legal Claims Ninth Amend. RICO, 18 USC subsection 1962(d) be removed from PLRA's screening provision.

### Record On Motion

This motion is made on all of the pleadings and paper's already filed in this action.

Respectfully submitted,

/s/ [signature]

Ronnie D. Thomas, #254903
Plaintiff

Date: 2/14/2025

Ronnie Dante Thomas
Bellamy Creek Corr. Facility
1727 W. Bluewater Hwy.
Ionia, Michigan 48846

Office of the Clerk
U.S. Dist. Ct.
113 Federal Bldg.
315 W. Allegan St.
Lansing, MI 48933