UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RONNIE DANTE THOMAS,

        Plaintiff,

v.

UNKNOWN PIGGETT et al.,

        Defendants.
_____/

Case No. 1:25-cv-20

Honorable Jane M. Beckering

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. The Court will also deny Plaintiff's motion for a preliminary injunction (ECF No. 4) and motion to exclude Plaintiff's legal claims from the screening requirement of the PLRA (ECF No. 7).

**Discussion**

I.     **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues IBC Officers Unknown Piggett, Unknown Ramirez, Unknown Silvernail, and Unknown Jensen in their individual and official capacities. (Compl., ECF No. 1, PageID.2.)

Plaintiff suffers from thyroid nodules on his neck, for which he has received extensive medical treatment. (*Id.*, PageID.6–7). He alleges that, on August 7, 2024, non-party Physician Matthew Wideman issued Plaintiff a medical detail for two pillows due to Plaintiff's thyroid nodule to elevate Plaintiff's head and neck and prevent suffocation while sleeping. (*Id.*)

On September 3, 2024, Plaintiff was assaulted by non-party prisoners and moved to Unit 1 for protective custody. (*Id.*, PageID.8.) On September 4, 2024, Plaintiff informed Defendant Piggett of Plaintiff's medical detail for two pillows and showed Defendant Piggett the massive nodule on the side of Plaintiff's neck. (*Id.*, PageID.9.) Defendant Piggett made an "invective comment," laughed, and did not provide Plaintiff with a pillow. (*Id.*)

That same day, Plaintiff spoke with Defendant Ramirez when Defendant Ramirez was doing his rounds. (*Id.*, PageID.9.) Plaintiff informed Defendant Ramirez of the medical accommodation and Defendant Piggett's response. (*Id.*) Defendant Ramirez showed concern for Plaintiff but stated that there were no pillows in the housing unit. (*Id.*) Plaintiff then fashioned a "pillow-like construct out of a roll-up cover, sheet and towel . . ." (*Id.*)

Nine days later, on September 13, 2024, Plaintiff spoke with Defendant Silvernail regarding his medical accommodation. (*Id.*, PageID.10.) Defendant Silvernail laughed and continued his rounds. (*Id.*)

Sometime between September 14 and September 16, 2024, Plaintiff spoke with Defendant Jensen while Defendant Jensen was making an observation round in the housing unit. (*Id.*) Plaintiff informed Defendant Jensen of Plaintiff's medical accommodation. (*Id.*) Plaintiff complained that Jensen's fellow officers had been deliberately indifferent to Plaintiff's medical accommodation. (*Id.*) Defendant Jensen told Plaintiff, "If my brethren officer[s] don't give a dame [sic] about your two (2) pillow medical detail than [sic], 'I' really could careless [sic]." (*Id.*)

Plaintiff states that after every encounter with each Defendant, he lodged an oral grievance and requested a formal grievance form. (*Id.*) Plaintiff notes that each defendant claimed that there were no such forms available or that they were waiting for a shipment to arrive. (*Id.*) Plaintiff thought that their response was "spurious at best." (*Id.*) Despite Plaintiff's inability to acquire the forms from these Defendants, it appears he was able to file the grievances because he reports that he exhausted all administrative remedies through the third and final step of the grievance process. (*Id.*, PageID.11.) As a result of the actions of Defendants, Plaintiff states that he "was impaired in administering the business of the Thomas Family Trust as trustee and to perform the fiduciary duty as member-manager for Syllogic Visions Consulting, LLC. . . ." (*Id.*, PageID.10)

Plaintiff seeks to bring claims for violation of his First, Eighth, and Ninth Amendment rights, the Americans with Disabilities Act (ADA), and the Racketeer Influenced and Corrupt Organizations Act (RICO). (*Id.*, PageID.11–12.) Plaintiff also brings state law claims for "tortious interference [with] business relationship expectancy and tortious economic relations between the Thomas Family Trust and Syllogic Visions Consulting, LLC." (*Id.*) He seeks declaratory, injunctive, and monetary relief. (*Id.*, PageID.12–13.)

## II.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

3

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

    **A.**    **Section 1983 Claims**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As discussed above, Plaintiff brings claims for violation of his First, Eighth, and Ninth Amendment rights. (ECF No. 1, PageID.11.)

### 1. First Amendment Claims

Plaintiff brings First Amendment claims for retaliation for exercising rights protected by the First Amendment and for interference with his access to the Courts. (*Id.*, PageID.12.)[1]

#### a. Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839

---

[1] Plaintiff mentions that Defendants' interference with his filing of grievances violated his First Amendment right to "freedo[m] of speech." (Compl., ECF No. 1, PageID.12.) Plaintiff's "speech is not protected by the First Amendment if it is inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Griffin v. Berghuis*, 563 F. App'x 411, 415 (6th Cir. 2014) (internal quotation marks and citations omitted). Here, Plaintiff does not identify how his speech was curtailed except to say that his oral complaints were followed by Defendants' refusals to provide grievance forms or pillows. Essentially, Plaintiff contends that his freedom of speech was impacted by Defendants' allegedly retaliatory actions. Plaintiff's "free speech" claim, therefore, is coextensive with his retaliation claim.

5

F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."). Here, Plaintiff references making the verbal complaints to Defendants Ramirez, Silvernail, and Jensen regarding Plaintiff's lack of pillows and his treatment by other Defendants.[2] At this stage of the proceedings, Plaintiff has alleged sufficient facts to suggest that he engaged in protected conduct for purposes of his First Amendment claim. However, that does not end the Court's inquiry.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

Here, Plaintiff alleges that, following Plaintiff's verbal complaints, Defendants maintained the status quo by not providing Plaintiff with pillows. Taking Plaintiff's allegations as true, Plaintiff's complaint fails to plausibly suggest that Defendants' failure to comply with Plaintiff's requests was motivated by retaliatory animus. According to Plaintiff's complaint, Plaintiff was not provided with pillows before he made his first complaint about Defendant Piggett's conduct. (*See* ECF No. 1, PageID.9.) Plaintiff has not provided the Court with any facts from which this Court

---

[2] Although Plaintiff contends that each of the Defendants retaliated against him, none of the alleged protected conduct occurred before Plaintiff's interaction with Defendant Piggett. For that reason, the Court concludes that Plaintiff has failed to state a retaliation claim against Defendant Piggett.

could infer that the continued inability or unwillingness to provide Plaintiff with pillows was motivated by Plaintiff's protected conduct.

In alleging that Defendants engaged in unlawful retaliation, Plaintiff merely alleges the ultimate fact of retaliation without providing any supporting facts. Such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Therefore, Plaintiff's claims of First Amendment retaliation will be dismissed for failure to state a claim.

### b. Access to the Courts

Plaintiff alleges in a conclusory fashion that Defendants have interfered with Plaintiff's access to the Courts; however, the basis for Plaintiff's claim is unclear.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right of access to the courts prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

To state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead that the defendants actions have hindered, or are presently hindering, his efforts to pursue a nonfrivolous

7

legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff has not mentioned any underlying cause of action that was hindered by Defendants refusal to provide Plaintiff with two pillows while in Unit 1 protective custody—nor can the Court imagine how such a claim could arise. To the extent that Plaintiff is attempting to raise a First Amendment access to the Court's claim based upon the denial of Plaintiff's grievances (*see* ECF No. 1, PageID.11), he cannot. Defendants' actions (or inactions) in response to Plaintiff's grievances have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*,

405 U.S. 319, 321 (1972). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis*, 518 U.S. at 355 (requiring actual injury); *Bounds*, 430 U.S. at 821–24. The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Alternatively, to the extent Plaintiff contends the lack of pillows interfered with his ability to bring claims on behalf of the trust or the LLC, those are not litigating capacities protected by the First Amendment under *Lewis*. Considering the foregoing, the Court finds that Plaintiff has failed to state a cognizable First Amendment claim for interference with Plaintiff's access to the courts.

### 2. Eighth Amendment Claims

Plaintiff alleges that Defendants' failure to comply with Plaintiff's medical detail for two pillows violated Plaintiff's Eighth Amendment rights. (ECF No. 1, PageID.11.) "The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir.

9

2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a medical professional's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899; *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The Eighth Amendment's subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*,

10

207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart*, 894 F.3d at 738 (quoting *Farmer*, 511 U.S. at 842).

Assuming without deciding that Plaintiff has an objectively serious medical condition as it relates to Plaintiff's need for two pillows, Plaintiff nonetheless fails to state an Eighth Amendment claim as his complaint contains no well-pleaded allegations that would suggest that Defendants, in failing to provide Plaintiff with pillows, were deliberately indifferent to Plaintiff's serious medical need.

First, Plaintiff has provided the Court with no facts from which the Court can infer that Defendants subjectively knew from viewing Plaintiff's nodule[3] alone that the failure to provide Plaintiff with two pillows during Plaintiff's limited time in protective custody posed a substantial risk of serious harm. Indeed, Plaintiff claims that he was able to fashion a "pillow-like construct out of a roll-up cover, sheet and towel . . ." during his stay in Unit 1 and does not allege that he experienced any physical harm due to his lack of pillows during this time. (ECF No. 1, PageID.10)

---

[3] Plaintiff alleges that he brought the medical accommodation to the attention of "the transporting officers" and that he supplied a copy of the medical accommodation to an unnamed Unit 1 officer to be placed at the Unit 1 main desk, (Compl., ECF No. 1, PageID.8), but he does not claim that the Defendants ever saw the medical detail. Plaintiff states only that he told Defendants about the detail and showed them his goiter. (*Id.*, PageID.9–10.)

These facts as pleaded do not state a claim for deliberate indifference. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claims.

### 3. Ninth Amendment Claims

Plaintiff claims that the actions of Defendants violated Plaintiff's Ninth Amendment rights. (ECF No. 1, PageID.11.) As the Sixth Circuit explained, the Ninth Amendment "does not confer substantive rights in addition to those conferred by other portions of our governing law" and thus has no applicability in suit under § 1983. *See Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991); *see also Paul v. Davis*, 424 U.S. 693, 700 (1976) (dismissing § 1983 claim for failing to indicate specific constitutional guarantee safeguarding the allegedly infringed interest).

To the extent Plaintiff seeks to assert a claim for violation of any specific constitutional right guaranteed by the Ninth Amendment, "such a claim fails simply because the Ninth Amendment does not guarantee any particular right, much less any right that is applied against the States by the Fourteenth Amendment." *Spencer v. City of Hendersonville*, 487 F. Supp. 3d 661, 681 (M.D. Tenn. 2020) (collecting cases). Accordingly, the Court will dismiss Plaintiff's Ninth Amendment claims.

### B. ADA Claims

Plaintiff also contends that Defendants violated Plaintiff's rights under Title II of the ADA, 42 U.S.C. § 12132. (ECF No. 1, PageID.11.) Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." *Id.* § 12102(2).

Here, Plaintiff does not provide the Court with facts that would indicate that Plaintiff is disabled within the meaning of the ADA or that he was subject to discrimination or otherwise excluded from any benefit because of a disability. In essence, Plaintiff asks the Court to fabricate plausibility to his claim from mere ambiguity; but ambiguity does not support a claim. It is Plaintiff's obligation at this stage to plead sufficient facts to state a claim plausible on its face. *Iqbal*, 556 U.S. at 679; Fed. R. Civ. P. 8(a)(2). Plaintiff fails to meet this minimal pleading burden. Therefore, the Court will dismiss Plaintiff's ADA claims.

### C.     RICO Claims

Plaintiff states that Defendants' actions of "tortious interference w/business relationship expectancy and tortious economic relations between the Thomas Family Trust and Syllogic Visions Consulting, LLC "constitute violations under [RICO] 18 U.S.C. Subsec. 1962(d)." (ECF No. 1, PageID.11). Not only is this allegation fatally conclusory, it is entirely illogical.

Section 1962 of RICO makes it illegal to engage in a pattern of racketeering activity. 18 U.S.C. § 1962(c). "Racketeering activity" is defined in § 1961(1) in terms of a long list of federal and state crimes, including mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. A "pattern of racketeering activity" requires at least two acts of racketeering activity within a ten-year period, 18 U.S.C. 1961(5), generally referred to as the "predicate acts" or "predicate offenses" underlying the RICO claim. Furthermore, "[t]o plausibly state a claim for a violation of 18 U.S.C. § 1962(d), plaintiffs must successfully allege all the elements of a RICO violation, as well as alleging 'the existence of an illicit agreement to violate the substantive RICO provision.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 411 (6th Cir. 2012) (quoting *United States v. Sinito,* 723 F.2d 1250, 1260 (6th Cir. 1983)).

Plaintiff has not identified a single offense that constitutes "racketeering activity" in the complaint. Plaintiff's failure to identify any predicate acts of racketeering activity is fatal to his

13

RICO claim. *See Moon v. Harrison Piping Supply Co.*, 465 F.3d 719, 724 (6th Cir. 2006) (court held that pleading two predicate acts was "necessary to sustain a RICO claim . . . [although it] may not be sufficient . . ."). Plaintiff's suggestion that Defendants violated RICO is no more than a conclusory assertion. *See Iqbal*, 556 U.S. at 678–79 (requiring more than conclusory labels); *Twombly*, 550 U.S. at 555 (same). Accordingly, Plaintiff's RICO claims will be dismissed.

### D.     State Law Claims

Plaintiff brings supplemental state law claims for "tortious interference [with] business relationship expectancy and tortious economic relations between the Thomas Family Trust and Syllogic Visions Consulting, LLC." (ECF No. 1, PageID.11.) Again, the Court cannot begin to imagine the basis for such claims.

> To prevail on a claim of tortious interference with economic expectancy under Michigan law, Plaintiffs must prove:
>
> > (i) the existence of a valid business relationship or expectancy; (ii) knowledge of the relationship or expectancy on the part of the defendant; (iii) intentional interference causing or inducing a termination of the relationship or expectancy; and (iv) resultant actual damage.

*Saab Auto. AB v. Gen. Motors Co.*, 770 F.3d 436, 440 (6th Cir. 2014) (citations omitted). Plaintiff alleges that he was not provided a pillow to accommodate his neck nodule. He has not alleged any facts concerning any valid business relationship or expectancy or Defendants' intentional interference with the same. Moreover, Plaintiff alleges no facts to suggest that he has suffered a termination of his relationship with, or expectancy from, the trust or the LLC. In short, any claims concerning "Thomas Family Trust and Syllogic Visions Consulting, LLC" are simply frivolous and will be dismissed.

E.  **Claims Raised on Behalf of the Trust or the LLC**[4]

Plaintiff may appear pro se on his own behalf under 28 U.S.C. § 1654, which states: "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." *Id*. But he may not appear on behalf of the LLC or the trust because § 1654 "does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney." *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993). *See, e.g., DeYoung v. Lee Trading & Investment PTE, Ltd.*, No. 1:20-cv-549, 2020 WL 8186265 at *1 (W.D. Mich. Oct. 23, 2020) (because a limited liability company or LLC is a hybrid of the partnership and corporate forms, it may appear in federal court only through a licensed attorney); *Keyway Leasing Trust v. United States*, No. 1:98-cv-796, 1999 WL 810386, at *1 (W.D. Mich. Aug. 26, 1999) ("The rationale for the rule requiring artificial entities to appear before the federal courts only through licensed counsel extends to trusts."). Because Plaintiff may not seek damages pro se on behalf of the Trust or the LLC, he has failed to state a claim on their behalf.

**III.  Plaintiff's Pending Motions**

In addition to his complaint, Plaintiff has also filed a motion for a preliminary injunction (ECF No. 4) and a motion to exclude Plaintiff's legal claims from the screening requirement of the PLRA (ECF No. 7). The Court will deny both motions.

---

[4] Plaintiff asks the Court to grant damages to him, the Thomas Family Trust, and Syllogic Visions Consulting, LLC. (Compl., ECF No. 1, PageID.12.)

### A. Motion for a Preliminary Injunction

In Plaintiff's motion for a preliminary injunction, Plaintiff seeks an order to enjoin Defendants from implementing MDOC policy that requires inmates to procure assistance from an ill-equipped legal writer program, disregarding the holding of *Knop v. Johnson*, 977 F.2d 996, 999 (6th Cir. 1992), and retaliating against Plaintiff's alleged business entities. (ECF No. 4, PageID.19–20.)

The purpose of a preliminary injunction is to preserve the status quo until a trial on the merits. *S. Glazer's Distribs. of Ohio L.L.C. v. Great Lake Brewing Co.*, 860 F.3d 844, 848 (6th Cir. 2017) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1982)). As set forth herein, the Court concludes that the action is properly dismissed. Therefore, the Court will deny Plaintiff's motion for a preliminary injunction as moot. *See Daunt v. Benson*, 956 F.3d 396, 421–22 (6th Cir. 2020) ("[A] court must not issue a preliminary injunction where the movant presents no likelihood of merits success.").

### B. Motion to Exclude Legal Claims

Plaintiff seeks to exclude his legal claims from the PLRA's screening requirement, asserting that "Plaintiff's submission factually alleges private contracts with Thomas Family Trust and Syllogic Visions Consulting, LLC were collaterally and adversely affected by the Defendant[s'] actions]." (ECF No. 7, PageID.42.) Again, Plaintiff's assertions regarding his business entities lack any factual, legal, or logical basis.

The Court is required to screen Plaintiff's complaint under both § 1915A, as "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and under § 1915(e)(2), as an action in which Plaintiff is proceeding *in forma pauperis*. The nature of Plaintiff's alleged injuries does not affect the Court's obligation. Therefore, the Court will deny Plaintiff's motion.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the full appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the full appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated:  April 14, 2025                                  /s/ Jane M. Beckering
                                                        Jane M. Beckering
                                                        United States District Judge